IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT PARKERSBURG

DANA EUGENE BUSKIRK,

    Plaintiff,

v.                                            Civil Action No. 6:13-cv-05800

CAROLYN COLVIN,
ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

    Defendant.

## PROPOSED FINDINGS AND RECOMMENDATIONS

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for supplemental security income (SSI), under Title XVI of the Social Security Act, 42 U.S.C. § 1381-1383f. By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 11), a Brief in Support of Defendant's Decision (ECF No. 12) and Plaintiff's Response to Objections (ECF No. 13).

Claimant, Dana Eugene Buskirk, filed an application on August 23, 2010. In his application, Claimant alleged disability beginning July 1, 2003. The claim was denied initially and upon reconsideration. Claimant filed a written request for hearing on March 18, 2011. Claimant appeared via video from Parkersburg, West Virginia. The hearing was held on November 8, 2011, in Charleston, West Virginia. In the decision

1

dated November 16, 2011, the Administrative Law Judge (ALJ) determined that Claimant was not entitled to benefits because he had not been under a disability from August 23, 2010, his protected filing date, through the date of the decision. On December 8, 2011, Claimant sought review by the Appeals Council. On January 28, 2013, the Appeals Council denied the request for review. Subsequently, Claimant filed a civil action before this Court.

On March 28, 2006, the Commissioner granted Claimant's application for SSI on the basis of satisfying the medical criteria for 20 C.F.R., Part 404, Subpart P, Appendix 1, §§ 1.04(A) and 11.08 (Tr. at 382, 384). Claimant's SSI was terminated due to excessive income, "winnings"[1] from electronic poker machines (Tr. at 43-44). On August 24, 2010, Claimant filed an application for SSI, alleging disability onset date of July 1, 2003 (Tr. at 172). Claimant's application was denied initially and upon reconsideration. Claimant requested a hearing. On November 8, 2011, a hearing was held in Charleston, West Virginia. Claimant appeared via video from Parkersburg, West Virginia. On November 16, 2011, Administrative Law Judge Susan L. Torres issued a decision denying Claimant's application for disability (Tr. at 31). The Appeals Council received additional evidence, Claimant's brief dated February 16, 2012, marked as Exhibit 17E, and made it part of the record (Tr. at 5). On January 28, 2013, the Appeals Council denied Claimant's request for further administrative review and notified Claimant that the ALJ's decision stood as the Commissioner's final decision (Tr. at 1).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial

---

[1] Money won as a prize from a contest, lottery or game of chance.

2

gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520, 416.920 (2013). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* § 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2013). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to

perform an alternative job and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the application date, August 23, 2010 (Tr. at 19). Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of cervical disc disease, status-post discectomy and fusion, chronic obstructive pulmonary disease, degenerative disc disease of the lumbar spine, peripheral artery disease, coronary artery disease and status-post myocardial infarction (Tr. at 19-20).[2] At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1 (Tr. at 22). The ALJ then found that Claimant has a Residual Functional Capacity (RFC) for light work, reduced by nonexertional limitations[3] (Tr. at 24). As a result, Claimant cannot return to his past relevant work (Tr. at 29). Nevertheless, the ALJ concluded that Claimant could perform a full range of light and semi-skilled representative occupations such as amateur winder repairer and bartender. Claimant was also found capable of performing light and unskilled occupations such as mail clerk (Tr. at 30). On this basis, benefits were denied.

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

---

[2] The ALJ's decision stated that "the undersigned notes that although all evidence of record has been reviewed and considered, only the treatment records relevant to the claimant's current application protectively filed August 23, 2010, are addressed in the current decision" (Tr. at 21).

[3] Claimant can only occasionally engage in the climbing of ramps and stairs. However, he should never climb ladders, ropes or scaffolds. Claimant can occasionally stoop, kneel, crouch and crawl. Also, the claimant must avoid concentrated exposure to vibrations, fumes, odors, dusts, gases, poorly ventilated areas and hazards (Tr. at 24).

4

> Evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational. *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was 52 years old at the time of the administrative hearing (Tr. at 45). He achieved his general education degree (GED) (Tr. at 46). Claimant previously worked as a mechanic for a taxi company (Tr. at 62). Claimant testified that he worked for approximately 8 months in 2009 (Tr. at 59). Claimant alleged that he was unable to work due to neck pain, hand pain and numbness that caused him to "constantly" drop items in his hands (Tr. at 49).[4] Claimant testified that due to numbness in his feet from claudication, poor circulation in the feet, that he needs a walker to ambulate (Tr. at 51-52). Claimant also stated on his Social Security Administration Function Report that he uses a cane "daily" (Tr. at 255).

---

[4] On Claimant's self reported Social Security Administration Function Report consisting of 8 pages, Claimant did not mention hand pain or numbness (Tr. at 249-256).

Claimant stated on his Social Security Administration Function Report that his daily activities include watching tv and doing small chores around the house, including laundry and preparing sandwiches and tv dinners (Tr. at 250- 251). Claimant stated on the Function Report that he goes grocery shopping a "couple times a month" (Tr. at 252). Claimant reported his hobbies to include tv and the computer which he participates in "daily" and does "ok" in these hobbies and interests (Tr. at 253). However, Claimant testified that his wife does the laundry and cooks (Tr. at 55). Claimant testified that he went to Camden-Clark Memorial Hospital in October 2011, because he had fallen off a 7 foot ladder while painting his house (Tr. at 60).

Claimant's SSI application dated August 23, 2010, states Claimant's onset date as July 1, 2003. When filing for SSI, the earliest month benefits can be paid to the claimant is the month following the month the claimant filed the application, if the claimant meets all the requirements for eligibility. *See* 20 C.F.R. § 416.335. Claimant reported on his SSI application that he began living at his current address in Parkersburg, West Virginia, in 2006. He reported that he had "been accused or convicted of a felony or an attempt to commit a felony in the state of Texas" (Tr. at 173). Claimant reported the statement applied to the timeframe from August 23, 2010, to "continuing." (*Id.*)

Medical Evidence

In March 2006, the Commissioner awarded Claimant SSI due to Claimant satisfying the medical criteria set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 at §§ 1.04(A), 11.08 (Tr. at 382, 384). On May 1, 2006, Claimant reported to Camden-Clark Memorial Hospital complaining of tremors and weakness (Tr. at 327). A CT scan with contrast was performed on Claimant with negative results. Claimant's white blood

count, hematocrit and platelet count were normal (Tr. at 328). On May 24, 2006, Houman Khosrovi, M.D., with St. Joseph's Hospital in Parkersburg, West Virginia, diagnosed Claimant with severe spinal canal stenosis with myelopathy and myelomalacia. Dr. Khosrovi performed an anterior cervical discectomy with fusion (Tr. at 354-356). On September 15, 2006, Claimant followed up with Dr. Khosrovi (Tr. at 597). Dr. Khosrovi reported "[Claimant] is actually three and half months out from anterior cervical discectomy fusion with spondylotic canal stenosis. He is reporting greater than 50% improvement in his symptoms." Dr. Khosrovi noted that Claimant's gait was steady and that his "AP, lateral, flexion, and extension cervical spine x-rays reveal good alignment of the fusion construct with no evidence of instability." Dr. Khosrovi was pleased with the patient's progress at this time. Dr. Khosrovi instructed Claimant to return in 9 months with repeat x-rays.

On September 29, 2007, Dr. Khosrovi reviewed x-rays taken on September 12, 2007, of Claimant (Tr. at 389-391). The post-surgical x-rays revealed good alignment of the cervical spine with no evidence of instability, abnormal soft tissue densities, significant spondylosis, facet arthropathy or significant degenerative disc disease. (*Id.*)

On January 8, 2010, Claimant reported to PARS Neurosurgical Associates, Inc. and was seen by Melischa P. Cowdery, FNP, BC (Tr. at 612). Claimant complained of pain in his lumbar spine. He rated the pain a 5 on a 1 out of 10 pain-rating scale. Claimant also complained of pain in the cervical spine that radiated into the arms bilaterally posteriorly to the hand and all 5 digits. On May 15, 2008, Claimant's family practitioner, Darcy M. Conner, D.O., examined Claimant's lower back upon receiving an MRI of the lumbar spine. Claimant complained of low back pain extending to his left hip and leg (Tr. at 672). Dr. Conner noted there was no evidence of fracture or

destructive lesion.  There was evidence of degenerative disc disease at L5-S1 where there was thinning of the disc space and diminished signal intensity of the disc material.  Axial projections demonstrated a lack of significant compromise of the AP diameter of the canal with "very subtle central subligamentous herniation" of the disc at L5-S1.  (*Id.*)  Dr. Conner's impression indicated that the remaining levels show no evidence of significant disc herniation, fragmentation of the discs or high grade spinal stenosis.

On July 8, 2009, Claimant was seen by Steven R. Burkholz, D.O., at Camden-Clark Memorial Hospital Emergency Department (Tr. at 426-429).  Claimant alleged he had collapsed and lost consciousness (Tr. at 426).  Dr. Burkholz noted that Claimant had recently seen Dr. Conner and noted that Claimant had been working in the heat for 2 to 3 hours over the prior 2 days.  (*Id.*)  An EKG was performed on Claimant with normal results (Tr. at 430).  Dr. Burkholz reviewed a CT of Claimant's head and reported no abnormality was detected (Tr. at 459).

On January 8, 2010, a study interpretation of an MRI of Claimant's lumbar spine reviewed by Ms. Cowdery, conducted on May 15, 2009, showed degenerative disc at L5-S1 with a mild central disc bulge not causing any canal or foraminal stenosis (Tr. at 612).  Under physical examination, Ms. Cowdery reported that Claimant was "in no acute distress" (Tr. at 614). Ms. Cowdery reported Claimant's lumbosacral spine as having "no lesions or deformities, paraspinal musculature is nontender to palpitation."  Claimant had full paraspinal muscle strength and paraspinal muscle tone within normal limits.  Claimant had full range of motion at the lumbosacral junction (Tr. at 615).  His paraspinal muscle was at full strength and paraspinal muscle tone was within normal limits.   Claimant's extremities showed no joint or limb tenderness to papation.  Claimant's extremities had normal range of motion.   Although Claimant reported

8

balance and gait dysfunction, upon physical examination Ms. Cowdery reported Claimant to have a normal gait. Claimant was reported able to stand and ambulate without difficulty (Tr. at 614, 616). Ms. Cowdery diagnosed Claimant's neurological exam and pathology as not significant enough to warrant surgical intervention.

On March 10, 2010, Claimant attended a regularly scheduled appointment with his family practitioner, Darcy M. Conner, D.O. (Tr. at 470). Claimant reported normal activity and energy level. Claimant complained of leg pain but did not use a cane (Tr. at 470-471). Claimant reported that beginning a month prior to the appointment, after several recent deaths in the family, he began experiencing symptoms including crying, a loss of joy and difficulty sleeping. On September 21, 2010, Claimant was seen by Dr. Conner with a chief complaint of right leg pain occurring for the previous 3 weeks (Tr. at 461). Dr. Conner noted upon physical examination that Claimant was in no acute distress (Tr. at 462). Claimant showed no signs of edema. Claimant's gait and station were normal.

On October 12, 2010, Claimant was seen by Daniel McGraw, M.D., with a chief complaint of claudication (Tr. at 819). Upon physical examination, Claimant was reported to be in no acute distress. Claimant's extremities were noted as showing mild edema. On October 24, 2010, Claimant reported to the emergency room at Camden-Clark Memorial Hospital in Parkersburg, West Virginia (Tr. at 703). Claimant reported falling off a 7 foot ladder and hitting the back of his head. Claimant complained of neck pain. Helical images of the cervical spine were obtained. These images were compared to MR images of the cervical spine taken on May 1, 2006. Remigio O. Jacob, M.D., reported viewing mild degenerative changes present at C2-C3 and C6-C7. Mild degenerative changes of the spinous processes were also noted. The facets were

9

reported as unremarkable, without evidence of subluxation or fracture. There was no other evidence of fractures. The surrounding paraspinal soft tissues were reported as unremarkable. Dr. Jacob's impression was "no evidence of traumatic cervical spine injury." (*Id.*)

Dr. McGraw performed an aotogram on Claimant on November 10, 2010. Dr. McGraw's impression was "severe right common iliac stenosis, completely resolved with stenting" (Tr. at 497). Dr. McGraw performed an aortobifemoral bypass on Claimant on October, 31, 2011 (Tr. at 821).

Claimant's Challenges to the Commissioner's Decision

Claimant argues that the ALJ committed reversible error in failing to find Claimant's conditions meet or medically equal Appendix 1 listings 1.04(A) or 11.08 (ECF No. 11). Claimant asserts the ALJ erred in failing to properly consider the impact of Claimant's peripheral artery disease and degenerative disc disease of the lumbar spine on his ability to work. Additionally, Claimant asserts the ALJ erred in finding Claimant's statements regarding the intensity, persistence and limiting effects of his symptoms were not fully credible.

The Commissioner asserts that the ALJ correctly determined that Claimant's impairments did not meet or equal a listed impairment, reasonably evaluated Claimant's Residual Functional Capacity (RFC) and reasonably evaluated Claimant's subjective complaints (ECF No. 12).

At step three of the sequential evaluation process, the Commissioner evaluates whether a claimant meets or equals a listed impairment in Appendix 1. *See* 20 C.F.R § 416.920(d). The listings include only those impairments which are considered severe enough to prevent a person from doing any gainful activity. *See* 20 C.F.R § 416.925. A

claimant equals a listed impairment when the medical findings are at least equivalent in severity and duration to the criteria of a listed impairment. *See* 20 C.F.R § 416.925.

In the present case, the Commissioner terminated Claimant's SSI payments due to excess income in May 2009 (Tr. at 17). Claimant's subsequent applications for SSI and Disability Insurance Benefits (DIB), under Title XVI and Title II of the Social Security Act, 42 U.S.C. §§ 1381-1383f, 401-433, were denied initially on January 4, 2010. No evidence was presented to demonstrate the Claimant appealed the decision.

It is documented in the disability review sheet noted that Claimant was contacted to verify "winnings" in 2007 (Tr. at 195). Claimant stated "that he should just take his check." Claimant had winnings of $12,516.00 in 2007. Claimant's winnings were divided by 12 and disbursed monthly to Claimant. The types of unearned income are listing in 20 C.F.R § 416.1121. Prizes and awards fall within the category of unearned income. The Social Security Administration determines a claimant's unearned income for each month. *See* 20 C.F.R §416.1123. Claimant erroneously asserts that the ALJ should have treated Claimant's claim of disability as a medical improvement under 20 C.F.R § 404 § 1594(a). The regulation Claimant cites is for a continuing disability review of DIB, not SSI. The regulation applicable to SSI is 20 C.F.R § 416.994(a). Claimant was receiving SSI benefits at the time he received unearned income of winnings. The amount of income is a major factor in deciding eligibility for SSI benefits and the amount of benefits. "If you have too much income, you are not eligible for a benefit" 20 C.F.R § 416.1100. Due to the excess income, the Commissioner terminated Claimant's payments for SSI benefits. Claimant did not appeal the termination (Tr. at 17). On November 23, 2009, Claimant filed applications for DIB and SSI. Claimant's applications were denied. There is no evidence Claimant filed an appeal. (*Id.*)

On August 23, 2010, Claimant filed the current application for SSI alleging disability beginning July 1, 2003. Although Claimant was awarded SSI benefits in March 2006 under listings 1.04(A) and 11.03 and received SSI benefits, the ALJ observed in the present claim that Claimant did not meet the impairment listing criteria. The ALJ considered all evidence of record during the relevant period of time applicable to the present claim.

Claimant's allegations of severe impairment of the lumbar spine and degenerative disc disease fail to meet or medically equal listing 1.04, addressing disorders of the spine, because there was no evidence of compromise of a nerve root or spinal cord characterized by neuro-anatomic distribution of pain, limited range of motion of the spine and motor loss accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raises; spinal arachnoiditis; or lumbar spinal stenosis resulting in pseudoclaudication and resulting in an inability to ambulate effective as defined in listing 1.00(B)(2). Claimant reported to doing laundry and a few household chores. Multiple treating physicians reported Claimant did not have an abnormal gait or an inability to ambulate. Although Claimant testified to always using a cane, physicians' treatment notes state Claimant's lack of use of a cane. Claimant's argument primarily focuses on medical opinions and evidence previously submitted in granting Claimant's application for SSI in 2006. The medical assessment in the current claim must be made to determine whether Claimant still qualifies for disability benefits.

Claimant's conditions have medically improved since he was awarded benefits in 2006. After those benefits were terminated due to excess income, Claimant filed a new application on August 23, 2010, to which the ALJ found that Claimant did not meet the listings criteria to qualify as a disability. The ALJ recognized that in 2006, Claimant

underwent back surgery (Tr. at 25). "However, subsequent treatment records documented the claimant had significant improvements, and he was doing well postoperatively." Claimant's range of motion, strength and stability were noted as satisfactory in multiple physicians visits as discussed above. Multiple physicians visits noted that Claimant showed no signs of distress.

The ALJ held that Claimant's chronic obstructive pulmonary disease failed to meet section 3.02, regarding chronic pulmonary insufficiency, in that it has not resulted in reduced forced expiratory volumes (FEV) and/or a forced vital capacity (FVC) equal to or less than those specified in Table I or II of listing section 3.01 and thus failed to meet the criteria for chronic obstructive pulmonary disease (Tr. at 23).

Claimant's peripheral arterial disease fails to meet the criteria for listing 4.12. The record fails to contain appropriate medically acceptable imaging showing intermittent claudication with one of the following: (A.) Resting ankle/brachial systolic blood pressure ration of less than 0.50; or (B.) Decrease in systolic blood pressure at the ankle on exercise of 50 % or more of pre-exercise level and requiring 10 minutes or more to return to pre-exercise level; or (C.) Resting toe systolic pressure of less than 30 mm Hg; or Resting toe/brachial systolic blood pressure ration of less than 0.40 (Tr. at 23-24). The record contains no evidence showing the level chronic heart failure, recurrent arrhythmias, symptomatic congenital heart disease, heart transplant, aneurysm of aorta or major branches or chronic venous insufficiency. (*Id.*)

On July 7, 2009, Claimant collapsed and lost consciousness (Tr. at 426). The ECG performed at Camden-Clark Memorial Hospital was normal. Claimant's chest x-rays were negative on July 8, 2009 (Tr. at 458). Claimant's head CT showed no abnormality and another head CT was normal on November 25, 2009 (Tr. at 458, 460).

13

Listing 11.03 regarding epilepsy requires seizures occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. Alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day is required. Claimant failed to demonstrate the criteria necessary to establish listing 11.03.

Credibility Determination

Substantial evidence supports the ALJ's finding that Claimant's alleged severity of symptoms was not credible. The ALJ held Claimant's statements concerning the intensity, persistence and limiting effects of his symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment (Tr. at 21). The ALJ explained his reasons for finding Claimant not entirely credible; including the objective findings, treatment notes and his self-reported daily activities. Claimant testified to reporting to the hospital in October 2011 because had fallen off a 7 foot ladder while painting his house (Tr. at 60). This contradicts with Claimant's testimony and report that he uses a cane daily.

It is well-settled that a claimant's allegations alone will not establish that he is disabled. *See*, 20 C.F.R. § 404.1529 and *Craig v. Chater*, 76 F.3d 585, 594-595 (4th Cir. 1996). While the ALJ must seriously consider a claimant's subjective complaints, it is within the ALJ's discretion to weigh such complaints against the evidence and to reject them. *See*, 20 C.F.R. § 404.1529 and *Craig*, 76 F.3d at 595. As the fact-finder, the ALJ has the exclusive responsibility for making credibility determinations. *See*, *Shively v. Heckler*, 739 F.2d 987, 989-990 (4th Cir. 1984) (stating that "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight"). The

ALJ in the present case held that "based on [Claimant's] subjective complaints... he is not entirely credible" (Tr. at 21).

Vocational Expert's Testimony

At the hearing, the ALJ asked Vocational Expert Karen White if a hypothetical individual had the same age, education and work experience as Claimant and has the RFC to perform work at a medium exertion level with the same non-exertional limitations stated before, could he perform jobs in the national and regional economy? Vocational Expert White testified that the hypothetical individual could perform jobs such as a laundry worker, tow truck driver and taxi servicer (Tr. at 63). The ALJ asked the VE, considering Claimant's past work as a mechanic, if any skills could be transferred to light or secondary level work? The VE testified that Claimant could perform light work using "hand tools" and transferrable skills from his past work. The ALJ then asked the VE if the hypothetical person could perform light work with the same non-exertional limitations stated before? The VE answered affirmatively in stating the Claimant could perform the job of an amateur winder repair. The VE went on to testify that in semi-skilled work, Claimant could perform the job of a bartender or mail clerk. If the hypothetical individual required a sit-stand option to change position every 30 minutes, that individual could perform the mail clerk position (Tr. at 64). Pursuant to SSR 00-4[5], the Vocational Expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

---

[5] Social Security Ruling 00-4p: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions.

Conclusion

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge AFFIRM the final decision of the Commissioner, DENY Plaintiff's Brief in Support of Judgment on the Pleadings and DISMISS this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED and a copy will be submitted to the Honorable Thomas E. Johnston. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Johnston and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Date:  January 30, 2014

                                                   Dwane L. Tinsley
                                                   United States Magistrate Judge